IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BILLY KEITH EVANS SR. | § | |
| v. | § | CIVIL ACTION NO. 6:08cv136 |
| MAXEY CERLIANO, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Billy Evans, an inmate of the Texas Department of Criminal Justice, Institutional Division proceeding *pro se*, filed this civil action under 42 U.S.C. §1983 complaining of alleged violations of his civil rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Evans named Gregg County Sheriff Maxey Cerliano and jail deputies Bill Jennings, Craig Herrington, Steven Ison, Terry Baldwin, Tamika Carter, Steven Masten, and Racey Turner.

An evidentiary hearing was conducted on December 4, 2008, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, the parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636(c).
Prior to this hearing, the Court ordered the Defendants to answer the lawsuit. The Defendants Bill Jennings and Sheriff Cerliano were subsequently dismissed from the case. Two other Defendants, Baldwin and Herrington, could not be served; Herrington is on military duty in Iraq, and Baldwin has left the state and was last known to be in Virginia. The remaining parties consented to a trial before the Court, which was conducted without objection on April 7, 2009.

Findings of Fact

In a trial before the bench, the Court must find the facts specially and make conclusions of law. Rule 52(a), Fed. R. Civ. P. This Rule recognizes and rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence. Inwood Laboratories v. Ives Laboratories, 456 U.S. 844, 855 (1982).

In this case, I have examined the exhibits and considered the testimony of the parties and witnesses in the cause. I have also noted the demeanor of the parties as they appeared in the courtroom. After careful review of all of the evidence presented, I have found the following as facts:

Billy Evans was confined in the Gregg County Jail on December 28, 2007. He was housed in a maximum-security tank called 6DR2, which was on the sixth floor of the Gregg County Jail. This tank housed inmates charged with aggravated crimes. There was also a tank on the seventh floor called 7DR2. At one of the meals on that date, the trusty passing out meal trays, David Houston, brought seven trays for the eight inmates in the tank. When Evans came to get his tray, Houston told him that he had already received one, which was not true. Houston left the tank without giving Evans a tray. Officer Ison later learned that Evans had not received a meal tray and had one sent to him.

Later that day, Houston and two other inmates came to the tank and pounded on the window, voicing threats directed at Evans. Officer Tamika Carter, the floor officer, had been receiving a Longview Police Department officer and heard the commotion; she came over and told the three to leave. She then went to the control room and stated that there was something going on at DR2, but this warning went unheard. Carter then returned to work receiving the Longview Police Department officer.

Tank 6DR2 had two doors, an inner door and an outer door. The inner door was open to allow the inmates in the tank access to cleaning supplies, which had been placed in the area between the doors (called the "security vest" or the "sallyport"). The outer door was closed, and could be opened only from the control room.

The radios for the sixth and seventh floors of the jail operate on the same frequency. Shortly after 10:00 p.m., Officer Steven Masten was running the control board. He heard a request over the radio to open tank "DR2," and assumed that the request had come from Officer Carter and meant 6DR2, and so Masten opened the outer door to this tank. He then glanced out the window of the control room and saw Carter talking to the officer from the Longview Police Department, and realized that he had made a mistake; he closed the outer door to 6DR2.

However, it was too late. The three trusties had not complied with Carter's order to leave, and so when the door to 6DR2 opened, they entered the tank and Houston immediately assaulted Evans. Officers heard the commotion in the tank over the intercom and went to the tank to stop the fight.

When Officer Baldwin entered the tank, Evans was punching at one of the trusties. Baldwin discharged a taser gun at him, but Evans dodged the darts and laid down on the floor. Nonetheless, Evans continued to yell, curse, and make threats. He was placed in handcuffs and ordered repeatedly to stop yelling, but did not do so. Evans' yelling was agitating the other inmates in the tank and adding to the tension. Because he would not stop yelling, pepper spray was applied to him. Evans was then removed from the tank and taken to a shower for decontamination from the spray.

Afterwards, Evans was seen by Nurse Johnson. Her entry in the nurse's notes reads, in its entirety, as follows; "Inmate involved in altercation with another inmate. Has a bump on the left side of the head. Right hand has some swelling, able to move fingers." There are no other entries in the medical records concerning this incident.

These facts were testified to by Evans, Dr. Lewis Browne, Steven Ison, Tamika Carter, Steven Masten, and Racey Turner. Inmates Calvin Ward and Vidal Garcia testified as to their observations of the altercation, but I did not find their testimony to be credible.

Evans testified that he believed that Officer Tamika Carter intentionally had the door opened at the request of the trusties, so that they could enter the tank and assault him. I did not find this testimony to be credible. Although Evans said that he saw Carter talking to the trusties, this is

3

consistent with the evidence showing that Carter ordered them to leave the area. Evans also denied that he acted in an aggressive manner or that he was yelling when the officers entered the tank, but I did not find this testimony to be credible.

## Legal Standards and Analysis

Because Evans is the plaintiff in this lawsuit, he has the burden of proving his claims by a preponderance of the evidence. Vogel v. American Warranty Home Service Corp., 695 F.2d 877, 882 (5th Cir. 1983). A "preponderance of the evidence" means the greater weight of the evidence; it is that evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then the plaintiff has not met his burden of proof. Smith v. United States, 726 F.2d 428, 430 (8th Cir. 1984).

Evans presents two claims in his lawsuit. These are that the Gregg County officials were deliberately indifferent to his safety by opening the door to the tank, allowing the trusties to enter the tank and assault him, and that the officers used excessive force upon him when they entered the tank to quell the fight.

Prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental

conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

In this case, the preponderance of the credible evidence shows that the Defendants did not open the door to Evans' tank deliberately or with the intent to harm him, but that this happened as a result of a mistake made by Officer Masten, when he mis-interpreted a request to open "DR2" as meaning 6DR2 rather than 7DR2. Whether or not this was negligence or a lack of due care, the preponderance of the evidence in this case shows that it was not an act of deliberate indifference to the safety of Evans or any other inmate. Evans' claim on this point is without merit.

Similarly, the evidence shows that Officer Carter reported to the control room the fact that the trusties were in the hall outside of Evans' tank, but this report went unheard; this also does not show that the officers acted with deliberate indifference to the safety of Evans or any other inmate. *See* Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994) (noting that an official's failure to alleviate a significant risk which he should have perceived, but did not, cannot be considered as deliberate indifference to a prisoner's safety). Evans' claim on this point lacks merit as well.

Evans also complains that excessive force was used upon him by the officers when they entered the tank. The preponderance of the credible evidence shows that a taser gun was shot at Evans but missed, and that Evans was tightly handcuffed on the floor and sprayed with pepper spray in an effort to get him to stop yelling. An examination by the nurse showed that he suffered a bump on the side of his head, apparently where he had been struck by inmate Houston, and that his hand was swollen, either from the handcuffs or as a result of a blow which Evans had administered while defending himself from Houston.

The Supreme Court, in Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992), held that inmates raising allegations of excessive force must show that the force used was malicious and sadistic for the very purpose of causing harm rather than in a good faith effort to restore discipline;

the Court also noted that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson, 112 S.Ct. at 999.

In accordance with this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998); Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992). It should be noted that not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom.* John v. Johnson, 414 U.S. 1033 (1973) (cited with approval in Hudson, 112 S.Ct. at 1000).

In this case, even assuming that the swelling in Evans' hand was due to the handcuffing, this injury was *de minimis*. In Eighth Amendment cases involving claims of excessive use of force, the Fifth Circuit has expressly held that the claimant must show injuries that are more than *de minimis*, even if not "significant, serious, or more than minor." Gomez v. Chandler, 163 F.3d 921 (5th Cir. 1999); *accord*, Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992) ("The Eighth Amendment's prohibition of cruel and unusual punishment **necessarily excludes** from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (emphasis added).

An example of an Eighth Amendment case in which injuries were found to be *de minimis* is Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997). In that case, the plaintiff suffered a sore, bruised ear which lasted for three days and did not require medical attention, an injury which was held to be *de minimis*. In this case, Evans suffered some swelling to his right hand, which did not require

6

medical treatment at the time or thereafter. As in Siglar, his injury was *de minimis*. *See also* Young v. Saint, et al., slip op. no. 92-8420 (5th Cir., March 31, 1993) (unpublished) (inmate hit on the hand with a metal spatula, resulting in two scratches requiring antibiotic ointment and a bandage, and a slight decrease in flexion and extension of the inmate's fingers; the Fifth Circuit held that this injury was de minimis and that the use of force was not repugnant to the conscience of mankind); Potts v. Hill, slip op. no. 98-50214 (5th Cir., May 25, 1999) (unpublished) (inmate hit in the mouth during an altercation with a guard, causing a non-bleeding cut and making his mouth too sore to wear dentures for three weeks; the Fifth Circuit held that this injury was *de minimis* and upheld a grant of summary judgment for the guard). The first Hudson factor weighs against Evans.

The second Hudson factor concerns the need for the application of force. The preponderance of the credible evidence shows that Evans was involved in an altercation with another inmate, in a potentially dangerous situation in which three unauthorized inmates entered into a maximum security tank. Even after the inmates were separated, Evans continued to yell and use threatening language, increasing the tension in the room. The courts have noted that the management and treatment by a few guards of large numbers of inmates, not normally the most gentle or tractable of men and women, can require and justify the occasional use of intentional force. Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom.* John v. Johnson, 414 U.S. 1033 (1973) (cited with approval in Hudson, 112 S.Ct. at 1000); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) (citing Johnson). The second Hudson factor weighs against Evans.

The third Hudson factor concerns the relationship between the need and the amount of force used. The preponderance of the credible evidence shows that the amount of force used, which was relatively minor, was commensurate with the need. The third Hudson factor weighs against Evans.

The fourth Hudson factor concerns the threat reasonably perceived by responsible officials. The preponderance of the credible evidence shows that three inmates had gained unauthorized entry into a maximum security tank, housing inmates accused of serious or violent offenses, and that an altercation had broken out. Such a circumstance plainly poses a significant risk to the order and

7

security of the jail. Under these circumstances, the use of reasonable force is not a constitutional violation. Whitley v. Albers, 475 U.S. 312, 321 (1986). The fourth Hudson factor weighs against Evans.

The fifth Hudson factor concerns efforts made to temper the severity of a forceful response. The credible evidence presented in court does not show that any such efforts were made, although there were no physical blows directed at Evans by the officers. This factor is largely inconclusive, although it may weigh slightly in favor of Evans; however, this factor is outweighed by the other four.

Furthermore, Hudson itself requires a showing that the force be used maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to restore discipline. The preponderance of the credible evidence in this case shows that the force used upon Evans was applied in an effort to restore discipline and order in the tank, in the face of a potential riot situation, and not in a malicious or sadistic effort to cause harm to him. For this reason, Evans' use of force claim is also without merit.

## Qualified Immunity

The Fifth Circuit has held that to prevail in a Section 1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. To determine whether relief is appropriate, the court must undertake a two-pronged analysis.

First, the Court must evaluate whether a "plaintiff's allegations, if true, establish a constitutional violation." Second, if a constitutional violation is found to have occurred, the court must determine whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Williams v. Kaufman County, 352 F.3d 994, 1002 (5th Cir. 2003), *citing* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). These prongs are not sequential, but may be considered in any order. Pearson v. Callahan, 129 S.Ct. 808, 821 (2009).

In Hope, the Supreme Court reiterated the standard for a constitutional right to be clearly established, as follows:

> Its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ....but it is to say that in the light of pre-existing law. the unlawfulness must be apparent."

Hope, 536 U.S. at 739, 122 S.Ct. at 2515, *citing* Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The Supreme Court went on to clarify that the factual situation from which the pre-existing constitutional right developed does not have to be "fundamentally similar" to the one before a court when addressing qualified immunity. Rather, qualified immunity can be overcome as long as prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. The Court concluded that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 740-41, 122 S.Ct. at 2515-16.

In this case, Evans has failed to prove the deprivation of a constitutional right or that the Defendants acted in an unreasonable manner. Consequently, Evans has failed to overcome the qualified immunity defense. The Fifth Circuit has held that it is proper to submit the question of qualified immunity to the finder of fact. *See* Presley v. City of Benbrook, 4 F.3d 405, 409-10 (5th Cir. 1993). Accordingly, the Court finds as a matter of law that the Defendants have established their entitlement to the defense of qualified immunity.

## Conclusions of Law

Based on the above factual findings, made by a preponderance of the credible evidence pursuant to Rule 52(a), F. R. Civ. P., the Court makes the following conclusions of law:

1. The Defendants were not deliberately indifferent to the safety of the Plaintiff Billy Evans on December 28, 2007.

2. The Defendants did not subject the Plaintiff Billy Evans to cruel or unusual punishment through the application of excessive force on December 28, 2007.

3. The Defendants are entitled to the defense of qualified immunity from suit.

<u>Judgment</u>

Based on the above findings of fact and conclusions of law, made in accordance with Rule 52, F. R. Civ. P., it is hereby

ORDERED that judgment is entered in favor of the Defendants in this lawsuit and against the Plaintiff Billy Evans. It is further

ORDERED that the Plaintiff shall take nothing on his lawsuit and that said lawsuit is DISMISSED with prejudice. Finally, it is

ORDERED that all other claims and motions which may be pending in this lawsuit be and hereby are DENIED. This dismissal includes Evans' claims against Baldwin and Herrington; the preponderance of the credible evidence shows that these officers also were not deliberately indifferent to Evans' safety or inflict cruel and unusual punishment upon him through the use of excessive force.

So **ORDERED** and **SIGNED** this **9** day of **April, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE